IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TIMOTHY TORRENCE,

    Plaintiff,

    v.                                                                       Civ. No. 18-934 SCY

ANDREW SAUL, Commissioner of Social
Security,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record, Doc. 23, filed May 10, 2019, in support of Plaintiff Timothy Torrence's Complaint, Doc. 1, seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, denying Mr. Torrence's claim for disability insurance benefits and partially denying his claim for supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. On September 12, 2019, Mr. Torrence filed his Motion to Reverse and/or Remand. Doc. 30. The Commissioner filed a Response on December 12, 2019, Doc. 34, and Mr. Torrence filed a Reply on December 26, 2020, Doc. 35. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019 and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Doc. 20.

# BACKGROUND AND PROCEDURAL RECORD

Claimant Timothy Torrence suffers from the following severe impairments: status-post total replacement of the left hip joint; a depressive disorder, an anxiety disorder, a post-traumatic stress disorder (PTSD), a polysubstance abuse disorder (in remission beginning May 1, 2009), antisocial traits, and chronic back pain. Administrative Record ("AR") at 1223. Mr. Torrence is a high school graduate. AR 52, 575. He has past relevant work as a construction worker and forklift operator. AR 1271. He served in the Coast Guard from 1980 to 1982 and received an honorable discharge. AR 577. On account of Mr. Torrence's major depressive disorder and anxiety disorder, the Department of Veterans Affairs ("VA") issued service-connected disability ratings of 30% in 2010, 50% in 2011, and 100% in 2014. AR 1764-88.

On December 10, 2008, Mr. Torrence filed an application for benefits under Title II and Title XVI, alleging disability beginning October 15, 2007. AR 120-21. His application was initially denied on May 12, 2009, *id.*, and upon reconsideration on July 14, 2009, AR 122-23. Mr. Torrence requested a hearing on August 3, 2009. AR 197. Administrative Law Judge ("ALJ") Stephen E. Davis conducted a hearing in Indiana on February 15, 2011. AR 44-63. Mr. Torrence appeared, represented by counsel. AR 44. On July 1, 2011, ALJ Davis issued an unfavorable decision. AR 127-41. On December 1, 2011, the Appeals Council remanded the case for rehearing. AR 148-51. The Appeals Council determined that ALJ Davis's finding of non-severe mental impairments was not supported by substantial evidence, and that ALJ Davis' opinion professed to afford "great weight" to the opinion of treating physician David B. Tarr, Ph.D., but failed to incorporate all the limitations of that opinion into the RFC. AR 149-50.

On remand, ALJ Albert J. Velasquez held a hearing on May 8, 2012. AR 64-106. Mr. Torrence appeared again represented by counsel. AR 64. The ALJ took testimony from Mr.

Torrence and vocational expert ("VE") Robert Barber. *Id.* The ALJ adjourned the hearing to allow Mr. Torrence's counsel to submit additional medical evidence. AR 105-06. Another hearing was held on September 17, 2012. AR 108-19. ALJ Velasquez issued an unfavorable decision on October 26, 2012. AR 17-36. The Appeals Council denied Mr. Torrence's request for review on February 14, 2014. AR 1-4. Mr. Torrence timely appealed to this Court, who reversed and remanded for another hearing. AR 1471-80. The Court determined that the ALJ did not give legitimate or specific reasons for discounting the opinion of Dr. Tarr. AR 1478-50. On remand, ALJ Lillian Richter held a hearing in Albuquerque, New Mexico on March 28, 2016. AR 1279-1361. She issued an unfavorable decision on June 15, 2016. AR 1488-1507.

The Appeals Council reversed and remanded. AR 1518-19. It explained that, although the ALJ's decision gave significant weight to the 30% disability rating by the VA, it did not contain an evaluation of the subsequent 100% disability rating. AR 1518. Nor did the decision address psychological evidence and opinions in the record that related to the 100% disability rating. *Id.* On remand, the Appeals Council instructed the ALJ to update the record, give further consideration to the 100% disability rating, and further evaluate whether Mr. Torrence's drug and alcohol abuse is material to a finding of disability. AR 1519.

In December 2017, ALJ Richter held another hearing, at which Mr. Torrence and VE Patricia Knight testified. AR 1255-78. In March 2018, ALJ Richter issued a partially unfavorable decision. AR 1220-44. The Appeals Council denied Mr. Torrence's request for review. AR 1202-07. That decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. §§ 404.984, 416.1484. Mr. Torrence filed a timely appeal with this Court. Doc. 1.

The Court reserves discussion of the medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

    A.    Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

    (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

    (2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

    (3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

    (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

4

most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

The ALJ's decision evaluated the period between Mr. Torrence's alleged onset date of October 15, 2007 through the date the decision was issued. AR 1220. The ALJ found that Mr. Torrence engaged in alcohol and substance abuse through April 2009. AR 1224. Between the date of October 15, 2007 and April 2009, Mr. Torrence's mental symptoms were disabling. *Id.* But the ALJ found Mr. Torrence's substance abuse was a contributing factor material to the determination of disability, and absent the substance abuse he would not have been disabled. AR 1227-33, 1243. For the period of May 2009 to February 2017, the ALJ found Mr. Torrence was sober and not disabled under the Act. AR 1236-42. Finally, beginning in February 2017, the ALJ found that Mr. Torrence's age category changed and he became disabled under Medical-Vocational Rule 202.06. AR 1243-44. But as his date last insured was September 30, 2008, his Title II application was denied. AR 1244. His Title XVI application was granted beginning on February 1, 2017. *Id.*

Mr. Torrence argues that the Court should remand because: (1) ALJ Richter failed to follow the Appeals Council's instructions to evaluate the VA's disability rating, Doc. 30 at 21-22; (2) and ALJ Richter erred by failing to consider the opinion of his treating physician, Dr. Tarr, that Mr. Torrence's substance abuse was not material because Mr. Torrence would still suffer from debilitating anxiety and depression even if he stopped drinking, *id.* at 22-23. The Court agrees that the ALJ was required, but failed, to evaluate all of the medical opinions in the record that could have an effect on the RFC, including Dr. Tarr's opinion on materiality. Because Mr. Torrence's remaining arguments may be affected by the ALJ's treatment of this case on remand, the Court will not address those arguments. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

7

A. The Rule on Medical Opinions

The ALJ is required to evaluate every medical opinion he receives that could have an effect on the RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017,[4] as the present claim is, medical opinions are classified into two different categories: "acceptable medical sources" and "other sources." "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298. "Other medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Information from "other sources," both medical and non-medical, are used to "show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. § 416.902); *see* SSR 06-03p, 2006 WL 2329939, at *2.

---

[4] For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

A unique two-step rule applies to the opinions of treating physicians (acceptable medical sources who provide or have provided the claimant with medical treatment and who have an ongoing relationship with the claimant). First, the ALJ must determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* If it is not given controlling weight, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

> The factors in the regulation are:
>
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331.

The ALJ is not, however, required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The Tenth Circuit has

9

also expressed this as a requirement that the ALJ provide "specific and legitimate reasons" for rejecting an opinion. *Doyal*, 331 F.3d at 764; *Watkins*, 350 F.3d at 1301. The ALJ's reasons are reviewed for substantial evidence. *Doyal*, 331 F.3d at 764.

      B.      <u>Dr. Tarr's Opinions</u>

As relevant to this appeal, Dr. Tarr issued opinions on several different dates. In August of 2009, he opined that Mr. Torrence suffers from hallucinations, delusions, paranoid thinking, and panic attacks with "recurrent and intrusive recollections of traumatic experiences which are a source of marked distress." AR 196-97. Dr. Tarr found marked limitations in activities of daily living, social functioning, working in coordination with or proximity to others, making simple work related decisions, interacting appropriately with the general public, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism, getting along with co-workers and peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior, adhering to basic standards of neatness and cleanliness, and responding appropriately to changes in work setting. AR 198-99. He found moderate impairments in other categories of functioning. *Id.* Finally, Dr. Tarr opined that even if Mr. Torrence were to stop drinking, he would "still suffer disabling anxiety and depression that is independent of his alcohol abuse/dependence." AR 200.

In December 2009, Dr. Tarr opined that Mr. Torrence has PTSD and other anxiety disorders that make it difficult for him to function in situations of even mild stress. AR 1049.

In May 2011, Dr. Tarr reached conclusions similar to those in his August 2009 opinion regarding Mr. Torrence's marked limitations in mental functioning, AR 1061-62, and opined that he would be absent from work about three days per month, AR 1063. Finally, he indicated that the limitations date from Mr. Torrence's Coast Guard Service in 1980 to 1982. AR 1064. He did

not offer an opinion on whether Mr. Torrence would have these mental impairments absent substance abuse during the period he abused substances.

For her analysis pertaining to the period between October 2007 and April 2009, the ALJ "g[a]ve little weight to the opinions of David B. Tarr, Ph.D." AR 1231. The ALJ explained that "[t]he opinions were made in December 2009 and May 2011, several months after the claimant abstained from active use of drugs and alcohol." *Id.* "As discussed in further detail below, these opinions are properly assessed during the claimant's period of sobriety." *Id.*

In analyzing the period from April 2009 to February 2017, the ALJ discussed only Dr. Tarr's May 2011 opinion. AR 1240-41. The ALJ found that this opinion was not supported by Dr. Tarr's own treatment notes and was inconsistent with other evidence of record. AR 1240. The ALJ pointed to records documenting improvement in Mr. Torrence's cognitive and emotional state, his ability to present as pleasant and sociable during numerous office treatment visits, and his ability to present as logical, goal oriented, alert, and attentive during examinations throughout the sobriety period. *Id.* Additionally, the ALJ found the fact that Mr. Torrence performed substantial gainful activity after 1982, when Dr. Tarr believed the limitations began, further undermined the opinion. *Id.* Finally, the ALJ found Dr. Tarr's opinion inconsistent with physical therapy treatment notes documenting Mr. Torrence's self-professed ability to pursue education and employment. AR 1240-41.

    C.    <u>The ALJ Was Required to Evaluate Dr. Tarr's August 2009 Opinion.</u>

On appeal, Mr. Torrence does not challenge the ALJ's evaluation of the December 2009 or May 2011 opinions. His challenge is only to the ALJ's failure to discuss or acknowledge Dr. Tarr's August 2009 opinion that Mr. Torrence would still suffer disabling anxiety and depression even if he stopped drinking. Doc. 30 at 21-22.

The Commissioner confesses error in the ALJ's failure to discuss this opinion as it relates to the materiality of Mr. Torrence's substance abuse to his mental limitations. Doc. 34 at 9. If given controlling weight, Dr. Tarr's opinion that Mr. Torrence would suffer severe mental limitations, even in the absence of substance abuse, would have altered the RFC for Mr. Torrence's period of non-sobriety. Therefore, the Court agrees that the ALJ should have discussed it and was not permitted to ignore it. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012).

Nonetheless, the Commissioner contends that the error is harmless. Because Dr. Tarr's opinion was issued in August 2009, the Commissioner argues, it relates to the adjudicated period of May 2009 to February 2017, when the Commissioner claims Mr. Torrence was not experiencing substance abuse. Doc. 34 at 9. It follows logically, according to the Commissioner, that an opinion on the materiality of substance abuse is not relevant to an RFC for a period during which there was no substance abuse. *Id.*

The Court agrees that, if Dr. Tarr's August 2009 opinion related only to a period during which Mr. Torrence was sober, the portion of that opinion that addressed the materiality of Mr. Torrence's substance abuse would be irrelevant. The Court also agrees with Mr. Torrence, however, that the record does not clearly establish that Dr. Tarr's August 2009 opinion does not relate to the period between 2007 and April 2009 (during which Mr. Torrence indisputably abused substances). *See* Doc. 35 at 4-5; *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (harmless error is applicable only when "the missing fact was clearly established in the record"). To the contrary, a reasonable factfinder could determine that the August 2009 opinion addresses the period from 2007 until April 2009.

In other words, although Dr. Tarr's August 2009 opinion, on its face, does not specify its temporal applicability, after analyzing the opinion, the Court cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. In his August 2009 opinion, Dr. Tarr opined that Mr. Torrence would still have mental impairments if he stopped drinking. AR 200. It would have been nonsensical for Dr. Tarr to issue such an opinion if Dr. Tarr's report only addressed, as the Commissioner argues, the period after which Mr. Torrence had stopped drinking. To accept the Commissioner's argument, the Court would have to impute facially illogical opinions to Dr. Tarr as a matter of "clearly established" fact. *See Allen*, 357 F.3d at 1145 ("to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action").[5] In short, the Court cannot make the finding on which the Commissioner's harmless error argument depends: that it is clearly established in the record that Dr. Tarr's August 2009 report did not relate to the period between 2007 and April 2009.

The Commissioner also raises an alternative argument regarding Dr. Tarr (albeit in just two short sentences). He argues that even if Dr. Tarr's report did relate to the period between 2007 and 2009, "the ALJ discussed and reasonably discounted similar opinions from Dr. Tarr" and so any failure to discuss the August 2009 report was harmless. Doc. 34 at 9 (citing *Lately v.*

---

[5] Mr. Torrence concedes in his brief that "Dr. Tarr made his opinions during a period of sobriety and imposed disabling level limitations." Doc. 35 at 4. Thus, whether it is "clearly established" that Mr. Torrence's substance abuse ceased in April 2009 such that no reasonable factfinder could disagree is not currently at issue. Nonetheless, the Court notes that evidence in the record indicates Mr. Torrence continued to abuse substances after April 2009. For instance, Dr. Tarr commented in August 2009 that Mr. Torrence is "attempt[ing] to maintain sobriety," not that he had already achieved it. AR 199. And a VA progress note documents an admission by Mr. Torrence of cocaine use in August 2010. AR 1819.

*Colvin*, 560 F. App'x 751, 754 (10th Cir. 2014)). Although the Court agrees that Dr. Tarr's August 2009 report bears many similarities with his later reports, only in the August 2009 report did he discuss the effect of Mr. Torrence's substance abuse on his mental limitations. This distinction is critical because, unlike other periods the ALJ considered, the ALJ (like Dr. Tarr) found Mr. Torrence to be disabled from October 2007 through April 2009. Thus, unlike other periods, the ALJ found Mr. Torrence to be disabled between October 2007 and April 2009 and, therefore, was required to support her conclusion that this disability was attributable to his substance abuse.

Although the ALJ did explain why she found Mr. Torrence's substance abuse to be immaterial to his disability, this explanation failed to include any mention, much less analysis, of Dr. Tarr's opinion that Mr. Torrence's substance abuse was material. As set forth above in Section A, the opinion of a treating physician is generally entitled to deference and cannot be simply ignored. Had the ALJ placed the weight of a treating physician's testimony on the balance, the scale might have tipped in Mr. Torrence's favor. And, because such weighing falls to the ALJ in the first instance, the Court must remand this case for the ALJ to complete the task.

The Court acknowledges the logic implicit in the Commissioner's argument: if the ALJ properly rejected Dr. Tarr's opinion about Mr. Torrence's limitations for the period after 2009 when Mr. Torrence was sober, Dr. Tarr's opinion that Mr. Torrence would have the same limitations from 2007 to 2009, had he been sober, also could be validly rejected. The question before the Court, however, is not whether, had the ALJ addressed Dr. Tarr's August 2009 opinion, could she have justifiably discounted that opinion? Answering that question would require the Court to engage in the type of post hoc rationalization that binding Tenth Circuit authority prohibits. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("this court may

not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

Dr. Tarr was Mr. Torrence's treating physician, his opinion is the only treating source opinion for the period from October 2007 through April 2009, in his opinion Mr. Torrence had numerous marked limitations during this period, and, most importantly, he found that Mr. Torrence's substance abuse during this time was immaterial to these limitations. The ALJ's failure to consider Dr. Tarr's August 2009 opinion in coming to the opposite conclusion was not harmless and requires remand.

## **CONCLUSION**

Mr. Torrence's Motion to Reverse and/or Remand, Doc. 30, is GRANTED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent